UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY ADAMS,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. ED CV 08-1449-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her applications for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred in failing to: 1) properly consider the state agency psychiatrist's opinion; 2) pose a complete hypothetical question to the vocational expert; 3) properly consider lay witness testimony; and 4) develop the record. (Joint Stip. at 3-5, 7-9, 10-13, 15-19.) Because the Agency's decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence, it is affirmed.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB and SSI on November 2, 2006, alleging that she had been unable to work since July 1, 2006, because of Asperger's Syndrome and agoraphobia. (Administrative Record ("AR") 118, 137, 169.) The Agency denied the application initially and on reconsideration. (AR 54-58, 62-66.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 68, 108-115.) Plaintiff appeared with counsel and testified at a hearing on June 6, 2008. (AR 20-49.) On August 7, 2008, the ALJ issued a decision denying benefits. (AR 5-15.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-4.) Plaintiff then commenced the instant action.

## III. DISCUSSION

1. <u>The State Agency Reviewing Psychiatrist's Opinion</u>

In her first claim of error, Plaintiff contends that the ALJ erred in failing to properly consider an opinion of Dr. H.C. Amado, a state agency reviewing physician. (Joint Stip. at 3-5.) Plaintiff argues that the ALJ was required to consider Dr. Amado's findings and to give those findings some weight, unless the ALJ specifically chose to reject them. (Joint Stip. at 3, 5.) For the following reasons, this claim is rejected.

ALJ's are required to consider the opinions of non-examining, consulting doctors. 20 C.F.R. §§ 404.1527(f)(1), (2); 416.927(f)(1), (2); Social Security Ruling 96-6p; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (suggesting that a non-examining doctor's opinion is entitled to at least some weight). Dr Amado was a consulting doctor. He never examined or treated Plaintiff. Instead,

he reviewed the records of the doctors who had examined or treated Plaintiff and offered his opinion based on those reports.

Dr. Amado's opinion was contained in two check-the-box forms. The first was a Psychiatric Review Technique form in which he opined that Plaintiff had a medically-determinable anxiety disorder, not otherwise specified, and Asperger Syndrome. (AR 241-53.) He rated Plaintiff's degree of limitation as "moderate" for social functioning, concentration, persistence, and pace, and "mild" for activities of daily living. (AR 249.) He found that there was no evidence of repeated episodes of decompensation. (AR 249.)

In the "Consultant's Notes" section of the form, Dr. Amado reported that Plaintiff had been previously diagnosed with "developmental autism variant as well as agoraphobia," but had never received treatment. (AR 251.) He noted that the consultative psychiatric examiner had made "fairly benign" findings, including a Global Assessment Functioning ("GAF") score of 70, and concluded:

> It appears overall that available [evidence of record] supports the presence of a psych[iatric medically determinable impairment] which would not preclude the ability to sustain at least unskilled work activity, in a low-stress environment away from the general public. A less restricted determination could result if claimant were to avail herself of psychotherapy and/or medications for depression/anxiety, which could likely improve her quality of life. Mental allegations are seen to be partially supported within the available [medical evidence of record] at this time.

(AR 251.)

3

1    The second from he completed was a Mental Residual Functional
2 Capacity Assessment form.  (AR 238-40.)  In the "Summary Conclusions"
3 portion of that form, Dr. Amado opined that Plaintiff would be
4 "moderately" limited in her ability to carry out detailed
5 instructions, maintain attention and concentration for extended
6 periods, interact appropriately with the general public, accept
7 instructions and respond appropriately to criticism from supervisors,
8 get along with coworkers and peers, respond appropriately to changes
9 in the work setting, travel to unfamiliar places or use public
10 transportation, set realistic goals, and make plans independently of
11 others.  (AR 238-39.)  In the "Functional Capacity Assessment" portion
12 of the form, Dr. Amado explained the bases for these opinions,
13 directing the reader to "Please see CNN and 2506 IV."  (AR 240.)
14 "CNN" apparently refers to the "Case Analysis" prepared by the state
15 agency, which concluded that Plaintiff would be restricted to simple,
16 repetitive, non-public work.  (AR 253.)  The term "2506 IV" appears to
17 refer to the Psychiatric Review Technique form, designated form 2506,
18 discussed above.  (AR 241-52.)

     In his decision, the ALJ found at step two that Plaintiff's
20 mental impairment resulted in mild restrictions in activities of daily
21 living and moderate difficulties in social functioning, concentration,
22 persistence, and pace.  (AR 11.)  Clearly, these findings were taken
23 from Dr. Amado.  (AR 249.)  The ALJ then found that Plaintiff's
24 residual functional capacity would restrict her to "simple repetitive
25 tasks with preclusion from public contact and assembly line work."
26 (AR 11.)

     Though Dr. Amado reported Plaintiff's limitations in slightly
28 different language in the "Summary Conclusions" portion of the check-

the-box form, it is clear from the forms that he filled out that he believed that Plaintiff's mental limitations would not preclude her from unskilled, low-stress work away from the general public.[1] (AR 240, 251.) Because the ALJ not only took into account Dr. Amado's opinion but, in fact, adopted it in most respects, he was not required to set forth why he was rejecting the opinion. Plaintiff's argument that the ALJ erred because he failed to specifically address each of the limitations found by Dr. Amado in the check-the-box forms is rejected. That was not required. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (affirming ALJ's residual functional capacity determination where he "applied the proper legal standard and his decision [wa]s supported by substantial evidence."); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (holding ALJ is not required to discuss every piece of evidence so long as the decision is supported by substantial evidence). For these reasons, the Court concludes that the ALJ did not err with respect to Dr. Amado's opinion.

    2.   <u>The Hypothetical Question to the Vocational Expert</u>

In her second claim of error, Plaintiff contends that the ALJ erred when he failed to incorporate Dr. Amado's limitations in the hypothetical question to the vocational expert. (Joint Stip. at 7-9.) Again, the Court disagrees.

A hypothetical question that does not include all of a claimant's restrictions is legally inadequate. *Robbins v. Soc. Security Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). An ALJ may, however, limit a

---

[1] Moreover, the ALJ expressly rejected the consultative psychiatrist's finding that Plaintiff had no limitations, as did Dr. Amado. (AR 13, 251.)

5

1 hypothetical to only those restrictions that are supported by
2 substantial evidence in the record.  *Bayliss*, 427 F.3d at 1217-18.
3     The ALJ asked the vocational expert to assume a hypothetical
4 person with Plaintiff's background and education, who could do light
5 work, but was restricted in the use of her right arm, and who could do
6 simple work, not fast-paced production-type work, with no public
7 interaction.  (AR 45.)  The ALJ asked the vocational expert to also
8 assume that the person would work best alone, but would not be
9 precluded from working around others.  (AR 45.)  The vocational expert
10 testified that the hypothetical person could not perform any of
11 Plaintiff's past work, or any other work.  (AR 46.)
12     The ALJ then expanded the hypothetical question to include
13 someone who could perform "production work," such as "light janitorial
14 work, office work or something like that," but could not perform
15 "assembly line work."  (AR 46.)  With that revision, the vocational
16 expert found that such a hypothetical person could work as a data
17 entry clerk or housekeeper/cleaner.  (AR 47.)
18     Contrary to Plaintiff's arguments, this hypothetical question
19 properly reflected Dr. Amado's conclusion that Plaintiff could perform
20 unskilled work in a low-stress environment away from the general
21 public.  (AR 251.)  Because these limitations were consistent with Dr.
22 Amado's ultimate residual functional capacity assessment, as opposed
23 to Dr. Amado's summary conclusions in his check-the-box form which the
24 ALJ did not accept, the ALJ did not err in declining to include in the
25 hypothetical question other limitations.  *See Bayliss*, 427 F.3d at
26 1217 (upholding ALJ's hypothetical question that contained all the
27 limitations found credible and supported by substantial evidence in
28 the record).  Thus, this claim does not warrant remand or reversal.

3. <u>Lay Witness Testimony</u>

In her third claim of error, Plaintiff contends that the ALJ erred by failing to properly discuss the written "testimony" of her mother, Gina Rider. (Joint Stip. at 10-13.) Plaintiff argues that her mother offered detail on Plaintiff's inability to function, but that the ALJ stated only that the mother's statements were "somewhat consistent" with his residual functional capacity determination, without specifying which parts of her statements were not consistent and why he concluded that they were not. (Joint Stip. at 11-12.) This claim has no merit.

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d)(4),(e). Nevertheless, an ALJ need only give reasons that are "germane" to the testimony in order to reject it. *Bayliss*, 427 F.3d at 1218. Here, the ALJ did so.

Plaintiff's mother filled out and submitted two forms in support of Plaintiff's applications. (AR 151-59; 188-96.) In a November 16, 2006 form, she reported that Plaintiff helped with chores and played with a dog during the day. (AR 151-52.) She offered that Plaintiff needed reminders to take medication and had difficulty with "comprehension," but could do her own laundry and load and unload the dishwasher. (AR 153.) According to Plaintiff's mother, Plaintiff was "very nervous about going anywhere alone," but would accompany her shopping. (AR 154.) She also reported that Plaintiff "has found a 'social life' 'somewhat' on her computer," and reported that she "'finally' has a few friends." (AR 155.) Plaintiff's mother also observed that Plaintiff had a very low tolerance for being teased,

seemed angry a lot of the time, and had always been quite anti-social. (AR 156.)  In addition, Plaintiff's mother believed that Plaintiff had some difficulty with concentration, and sometimes could not follow written instructions, "depend[ing] on complexity[.]"  (AR 156.) According to Plaintiff's mother, Plaintiff did not know what to say in social situations, but had always gotten along very well with authority figures.  (AR 157, 158.)  She believed that Plaintiff did not handle stress or changes in routine well at all.  (AR 158.)

In a February 15, 2007 statement, she provided a very similar description of Plaintiff's activities and limitations.  She added that Plaintiff had trouble counting and telling time, unless a clock was digital.  (AR 191.)  The mother reported that Plaintiff went out once a week to church and had no problem paying attention.  (AR 193, 194.) She believed that Plaintiff had become "more and more unwilling to go out around people," but noted that Lexapro seemed "to be helping her relax more and not get so angry and irritated easily."  (AR 196.)

In his decision, the ALJ stated that he had considered the mother's statements and that he accepted them to the extent that they were consistent with his residual functional capacity determination. (AR 12.)  The residual functional capacity determination he referred to was based on the objective medical evidence and the ALJ's finding that Plaintiff was not as functionally limited as she claimed.  (AR 11-12.)  This justification for rejecting the mother's testimony, though terse, is germane to the testimony.  *See Bayliss*, 427 F.3d at 1218 (affirming ALJ's rejection of lay witness testimony because it was inconsistent with medical evidence).  As such, the ALJ's finding is affirmed.  Plaintiff's argument that the ALJ was required to specify which parts of the mother's testimony he accepted and which

1 parts he rejected is overruled.  The ALJ was not required to discuss
2 each point made by the mother and explain why he did not accept it.
3 Rather, it was enough for him to merely set forth a germane reason for
4 discounting the mother's testimony as a whole.[2]

     4.   <u>Failure To Develop The Record</u>

In her fourth claim of error, Plaintiff contends that the ALJ failed to properly develop the record when he rejected a medical report, in part, because it was unclear who had completed the form and what relationship that person had to Plaintiff, and, further, because it might represent a vocational opinion beyond the scope of that person's expertise. (Joint Stip. at 15-19.)  Plaintiff argues that, if the ALJ believed that there was insufficient information to determine who completed the form, he was obligated to recontact the facility to find out. (Joint Stip. at 16-17.)  Plaintiff also argues that the ALJ's other basis for rejecting the form--that it was inconsistent with treatment notes from the same facility--is not supported by substantial evidence. (Joint Stip. at 17-18.)  For the following reasons, this claim is rejected.

Plaintiff's objections here center on a Riverside County Mental Health form, entitled "Narrative Report (Adult)," dated March 15, 2007. (AR 265.)  The form includes a diagnosis of Asperger's Disorder and chronic social phobia. (AR 265.)  In response to Yes/No questions contained on the form, the health care provider indicated that Plaintiff is unable to maintain a sustained level of concentration,

---

[2] Had the ALJ been more clear in his decision, this challenge could have been avoided.  Though the standard for rejecting lay testimony is low, the ALJ should still endeavor to set forth his reasons clearly to avoid needless disputes.

9

sustain repetitive tasks for an extended period of time, adapt to new or stressful situations, and interact appropriately with strangers, co-workers, or supervisors. (AR 265.) The form also states that Plaintiff cannot complete a 40-hour work week without decompensating and that her prognosis is "chronic." (AR 265.)

The ALJ stated that he gave "little weight" to the questionnaire's conclusion that Plaintiff was incapable of completing a 40-hour work week without decompensation:

> First, it is unclear who is completing this form, what their relationship is to claimant and whether they represent an appropriate medical source. Second, this opinion represents a vocational opinion that, as far as I know, may or may not be within the individual's expertise. Third, this opinion appears inconsistent with other [Riverside County Mental Health] treatment notes indicating "good" response to medications and "appropriate" behavior in all respects with few, if any episodes, of low functioning.

(AR 13.)

The ALJ did not err in failing to develop the record with respect to this report. His duty to fully develop the record is only triggered when there is ambiguous evidence or an inadequacy in the record prevents a proper evaluation of the disability claim. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512(e), 416.912(e). Here, the ALJ's finding that it was unclear who completed the form did not prevent him from evaluating the opinion contained therein, and Plaintiff's disability claim in general. Thus, he was not obligated to recontact Plaintiff's doctors for further clarification. *See Bayliss*, 427 F.3d at 1217.

Moreover, even assuming that the form represented a treating physician's opinion that Plaintiff was impaired, the ALJ was not required to accept it. As he noted, the March 2007 opinion was contradicted by the chart notes that preceded and followed it. (AR 310-33.) An ALJ can reject a treating doctor's opinion for specific and legitimate reason, *see Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007) (stating that ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting treating doctor's opinion that is contradicted by a non-treating doctor's opinion) (citation omitted), and this is a specific and legitimate reason for rejecting an opinion. *See*, *e.g.*, *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding inconsistencies within and between treating physicians' reports support rejection of the treating opinion). Thus, this claim does not warrant remand.[3]

## IV. CONCLUSION

For these reasons, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: March 1, 2010.

*/s/ Patrick J. Walsh*
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\Adams\Memo_Opinion.wpd

---

[3] Had the ALJ rejected the opinion solely because it was unclear who had rendered it and what his or her expertise was, the Court would have sided with Plaintiff. But, because the ALJ set forth a specific and legitimate reason for rejecting the report, which was supported by substantial evidence, his decision will not be disturbed.